## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **PAUL STRAIGHT,** | ) |
| | ) Case No.: 2:20-CV-6551 |
| *Plaintiff,* | ) |
| | ) |
| **VS.** | ) |
| | ) |
| **LG CHEM LTD.** | ) **COMPLAINT** |
| LG Twin Towers, | ) |
| 128, Yeoui-daero, Yeongdeungpo-gu, | ) **DEMAND FOR** |
| Seoul, South Korea | ) **JURY TRIAL** |
| | ) |
| *Serve:* | ) |
| LG Twin Towers, | ) |
| 128, Yeoui-daero, Yeongdeungpo-gu, | ) |
| Seoul, South Korea | ) |
| | ) |
| **LG CHEM AMERICA INC.** | ) |
| 3475 Piedmont Road, NE, Suite 1200, | ) |
| Atlanta, GA, 30305 | ) |
| | ) |
| *Serve:* | ) |
| Corporation Service Company | ) |
| 40 Technology Pkwy South, #300 | ) |
| Norcross, GA 30092 | ) |
| | ) |
| **VAPOR STATION HEBRON LLC** | ) |
| **d/b/a VAPOR STATION** | ) |
| 5772 Blacks Road SW | ) |
| Pataskala, Ohio 43062 | ) |
| | ) |
| *Serve:* | ) |
| Steven Bowman | ) |
| 5772 Blacks Road SW | ) |
| Pataskala, Ohio 43062 | ) |
| | ) |



and )
)
**JOHN DOE DEFENDANTS 1 - 50,** )
Designer, manufacturer, producer, )
assembler, distributor, supplier, seller, )
wrapper, and/or repairer of the Aspire )
Pegasus Mod and/or lithium-ion battery )
(Including any successor and/or )
predecessor companies thereto) )
Names and Address Unknown )
)
)
)
*Defendants.* )
)
)
)

COMES NOW Plaintiff, Paul Straight, by and through his attorneys of record, and for claims for relief against the above-named Defendants complains, alleges, and states as follows:

## I.     PARTIES

1.     Plaintiff Paul Straight was and is a citizen and resident of Buckeye Lake, Ohio, and is domiciled in the State of Ohio.

2.     At all times relevant, Defendant Vapor Station Hebron LLC d/b/a Vapor Station (hereinafter "Vapor Station") is and was a limited liability company organized under the laws of Ohio.  Vapor Station's principal place of business is located at 611 Hebron Road, Heath, Ohio 43056.  Vapor Station's registered agent for process is Steven Bowman, located at 5772 Blacks Road SW, Pataskala, Ohio 43062.

3.      Defendant LG Chem America, Inc. ("LGCAI") is a Delaware corporation with its principle place of business located in Atlanta, Fulton County, Georgia.  At all times relevant hereto, LG Chem America was a distributor and/or seller of various LG products, including but not limited to lithium-ion batteries.

4.      Defendant LG Chem Ltd. ("LG Korea") is a multi-national chemical-based company founded in Korea in 1947. It boasts of leading the global market with its manufacture and sale of lithium-ion batteries, such as the cylindrical 18650 batteries at issue in this case.

5.      Defendant LGCAI and Defendant LG Korea will collectively be referred to as the "LG Defendants."

6.      LG Korea does not maintain any physical presence in the United States.  It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

7.      LG Korea documents characterize the business activities of one such subsidiary, Defendant LGCAI, as "sales and trading" of LG Korea's products in the United States.

8.      Upon information and belief, LGCAI is a wholly owned subsidiary of LG Korea and has extensive operations in both Georgia, California, and Ohio.

9.      LG Korea created LGCAI for the specific purpose of "sales and trading" of LG Chem Korea products in the United States.

10.     LG Korea and LGCAI represent themselves as one and the same in the marketing of their products.

11.     Upon information and belief, LG Korea ships lithium-ion batteries and other products directly into the United States from Korea, and LGCAI - in its role as shipper and distributor - fulfills delivery and distribution of said items both in and throughout the United States. LGCAI takes possession of lithium-ion batteries in the United States and systematically sells, ships, and/or distributes them throughout the United States, including Georgia.

12.     LG Korea and LGCAI have a yearly revenue of over $278 million attributable to batteries sold or imported into the United States and $2.4 billion worldwide.

13.     LG Korea exercises pervasive and tight control over the sales and trading activities of its subsidiary, LGCAI, and LGCAI was created solely for the purpose of acting as an instrumentality through which LG Korea could sell and distribute its products, including batteries, in the United States.

14.     LG Korea designed, manufactured, distributed, sold, and/or otherwise placed the subject battery that injured Plaintiff into the stream of commerce.

15.     The instant case involves the explosion of a lithium-ion battery, and the subject battery, and other similar/identical 18650 lithium-ion batteries, was advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the LG Defendants and one or more distributors and/or retailers who sell and distribute LG products, including the subject battery and similar batteries to consumers.

16. The LG Defendants sell lithium-ion batteries to Chinese companies known to the LG Defendants to be distributors of e-cigarette and personal vaping products, including 18650 batteries.

17. The LG Defendants know the Chinese entities to whom they sell their products, including lithium-ion 18650 batteries, distribute said products to e-cigarette and vaping retailers, wholesalers, and distributors in the United States.

18. LGCAI is registered to do business in only seventeen (17) states; it manages customer accounts, provides marketing support, provides technical support, and conducts external technology research, all on behalf of its corporate parent and product manufacturer, LG Korea.

19. At all times relevant, Defendants John Does 1 through 50, are individuals or entities, including any successor and/or predecessor companies thereto, that designed, manufactured, produced, assembled, supplied, wrapped, sold, repaired, and/or distributed the subject batteries and/or similar lithium-ion 18650 batteries manufactured Plaintiff Paul Straight does not know and cannot ascertain the true names of Defendant John Does 1 through 50 despite due diligence of Plaintiff. Upon information and belief, Defendant Vapor Station is the seller of the Subject Battery and the Subject Mod. Defendant Vapor Station is the entity who can provide information as to the distributors, importers, manufacturers, designers, or corporations to which and/or from which it purchased and/or sold the Subject Battery and the Subject Mod. Plaintiff will obtain this information from Defendant Vapor Station, through the discovery process, and seek leave to amend the pleading and provide the true names of Defendants John Does 1 through 50.

## II. JURISDICTION AND VENUE

20.     Subject matter jurisdiction is appropriate in this Court because this action includes a federal cause of action.

21.     This Court has personal jurisdiction over Defendant LG Chem Ltd. (hereinafter "LGC") because it actively does business in this District and the State of Ohio. Defendants have purposefully availed themselves of the benefits, protections, and privileges of the laws of the State of Ohio through the promotion, marketing, distribution, and sale of the products at issue and have purposefully directed their activities to and conducted their activities in this State. Defendants have sufficient minimum contacts with this State to render the exercise of jurisdiction by this Court permissible.

22.     This Court has personal jurisdiction over Defendant LG Chem America Inc. (hereinafter "LGCAI") because it actively does business in this District and the State of Ohio. Defendants have purposefully availed themselves of the benefits, protections, and privileges of the laws of the State of Ohio through the promotion, marketing, distribution, and sale of the products at issue and have purposefully directed their activities to and conducted their activities in this State. Defendants have sufficient minimum contacts with this State to render the exercise of jurisdiction by this Court permissible.

23.     This Court has personal jurisdiction over Defendant Vapor Station because it is an Ohio-based Limited Liability Corporation with its principal place of business located in the State of Ohio.

24.     Venue is appropriate in this Court under 28 U.S.C. § 1391 and S.D. Ohio Civ. R. 82.1 because Defendants conduct business here and are subject to personal

jurisdiction in this District. Also, substantial acts or omissions giving rise to this lawsuit took place in this District.

### III. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

25. E-cigarettes, also known as e-cigs, e-hookahs, hookah pens, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery-operated devices that deliver nicotine through flavoring and other chemicals to users in the form of vapor instead of smoke.[1] They were first patented in 2003 and have been available for sale in the United States since 2007.[2]

26. E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves.[3] E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice" or "e-liquid," providing a physical sensation similar to tobacco smoke.

27. Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

28. E-cigarettes differ from traditional cigarettes in a critical way: the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component. While both products may produce a

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at
https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf
[3] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

similar physical sensation, e-cigarettes pose an additional danger - the battery-powered heating element, as well as the battery itself - that can and have caused explosions, fires, and serious injury.

29.    E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device, requiring a lithium-ion battery of a similar shape.  When the device malfunctions or fails, the battery can be shot out like a bullet or rocket.[4]

30.    At least two deaths have been reported in relation to exploding e-cigarettes.

31.    E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids[5] and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.[6]

32.    Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012.  Industry experts predict the e-cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[7]

33.    In January 2014, there were 466 brands of e-cigarettes and over 7,000 unique e-cigarette juice flavors available for sale.[8]

---

[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *Id.*
[6] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.
[7] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com, April 17, 2012.
[8] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.

34.     To date, e-cigarette marketing is unfettered and unregulated. Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena. Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and have the freedom to utilize the same marketing tactics previously employed by big tobacco. Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

35.     Federal agencies have begun to recognize the dangers posed by e-cigarettes. In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and unique hazard" because there is "no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[9]

36.     Vapor Station holds itself out to the public as having heightened knowledge regarding e-cigarettes and their component parts, including lithium-ion batteries.

---

[9] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017.

**The LG Defendants, Their Sale of Lithium-Ion Batteries, and Knowledge That Said Batteries Were Used With E-Cigarettes**

37.     The LG Defendants have known their batteries were being sold into the e-cigarette market and were being used by e-cigarette consumers since 2015.

38.     LG Korea does not maintain any physical presence in the United States.  It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

39.     LG Korea documents characterize the business activities of one such subsidiary, Defendant LGCAI as "sales and trading" of LG Korea's products in the United States.

40.     Upon information and belief, LGCAI is a wholly owned subsidiary of LG Korea and has extensive operations in Ohio.

41.     LG Korea created LGCAI for the specific purpose of "sales and trading" of LG Chem Korea products in the United States.  Additionally, upon information and belief, LGCAI was involved in the design and specification of LG lithium-ion 18650 batteries to be sold in the United States.

42.     LG Korea is a global supplier of products and touts its global reach, nothing LG "is literally the company leading the chemical industry in Korea.  The company has built the global network for production, sales, and R&D not only in Korea but also in main bases across the world and has provided globally competitive products … LG Chem is committed to becoming a global company …." *See* "About Us" page on LG Chem's website, available at https://www.lgchem.com/company/company-information/about.

43.     LG Korea sells its batteries worldwide, utilizing distributors across the globe, including its subsidiary, LGCAI.  The batteries are then redistributed, sold, packaged, transported, or provided to end users in Ohio and across the United States for use.

44.     The regular course and scope of LG Korea's batteries involves the shipping of large quantities of its batteries, both the cylindrical lithium-ion battery at issue here as well as LG Korea's other energy storage products, into and throughout Ohio and beyond.

45.     Based on information and belief, during at least the years 2012 to the present, LG Korea supplied, sold, shipped, distributed and provided directly to consumers and distributors throughout the State of Ohio, thousands (if not millions) of its products, including cylindrical lithium-ion batteries, which were sold for use, and used, in Ohio.

46.     Based on information and belief, LG Korea marketed, advertised, targeted consumers, and promoted the sale of its various products, including lithium-ion batteries, to numerous consumers and distributors throughout Ohio. Upon information and belief, those distributors, and other distributors located throughout the United States and the world, in turn sold large quantities of products, including LG lithium-ion batteries to wholesalers and retailers located in Ohio for the direct sale to Ohio consumers, where said products were purchased by Ohio residents and used in this State.

47.     In addition to the authorized LG Korea batteries shipped directly to Ohio, LG Korea also engages, upon information and belief, in a grading process for the various batteries it manufacturers. Upon information and belief, those batteries that fail to achieve a sufficient grade or conform appropriately to standards are not discarded.

48.     Instead, in the interests of profit, LG Korea sells those inferior or nonconforming lithium-ion battery products to other distributors, with LG knowing full well they may be using those batteries for individual electronic or other uses-uses that may not be explicitly authorized but are certainly permitted by LG Korea in the interest of maintaining its profitability.

49.     In addition, based upon information and belief, in the manufacturing process, LG Korea ends up with a significant quantity of batteries with cosmetic defects in the wrapper, without a wrapper at all, or with batteries with other types of cosmetic and other defects. Again, instead of discarding those batteries, LG Korea knowingly sells those substandard batteries to various distributors throughout the world to remove the cosmetically defective or missing wrapper, apply their own wrapping, and then sell those batteries for other uses. One of the principal locations to which LG Korea ships its substandard batteries is Shenzhen, China.

50.     Those batteries are then sold to consumers throughout the world, and readily and rapidly reach Ohio consumers, all at the reasonable expectation or explicit knowledge of LG Korea. Based on these two avenues, LG Korea ultimately sells huge quantities of lithium-ion batteries that end up in the electronic cigarette market in Ohio, and end up in the hands of Ohio consumers, including upon information and belief, the battery at issue in this matter.

51.    Based on information and belief, LG's marketing, advertising, sale, distribution network, and provision of batteries to Ohio resulted in the use of thousands, if not millions, of LG products, particularly cylindrical lithium-ion batteries, in the State of Ohio-and comprising one of LG's primary distribution channels for its products.

52.    LG Korea and LGCAI have a yearly revenue of over $278 million attributable to batteries sold or imported into the United States and $2.4 billion worldwide.

53.    LG Korea exercises pervasive and tight control over the sales and trading activities of its subsidiary, LGCAI, and LGCAI was created solely for the purpose of acting as an instrumentality through which LG Korea could sell and distribute its products, including batteries, in the United States.

54.    LG Korea designed, manufactured, distributed, sold, and/or otherwise placed the subject battery that injured Plaintiff into the stream of commerce.

55.    The instant case involves the explosion of a lithium-ion battery. The subject battery, and other similar/identical 18650 lithium-ion batteries, were advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the LG Defendants and one or more distributors and/or retailers who sell and distribute LG products, including the subject battery and similar batteries to consumers.

56.    LG Chem America is registered to do business in only seventeen (17) states, one of which is Ohio. It manages customer accounts, provides marketing support, provides technical support, and conducts external technology research, all on behalf of its corporate parent and product manufacturer, LG Korea.

57. Despite the significant profit LG Korea garners from its United States based business, it asserts it is not subject to the jurisdiction of any court (whether state or federal) in the United States.

58. For at least the last six years, it has been well known in the electronic cigarette industry, and based upon information and belief, well known to LG, that its lithium-ion batteries were being used in connection with electronic cigarettes and were even *recommended* by multiple online sources for e-cig use.

59. LG lithium-ion batteries can carry a catastrophic risk of explosion to end users. Indeed, even on the primary search engine used in LG's home country, South Korea, there are *hundreds* of news articles detailing the explosion issues with electronic cigarette batteries such as LG Korea's 18650 battery (the type that exploded here).

60. The first of these articles appear as early as February 2012 and detail a spate of explosions across the world, damaging and burning faces, mouths, hands, legs, and bodies. With respect to administrative action, the U.S. Fire Administration published a report in October 2014 detailing fires and explosions in electronic cigarettes dating back to 2009; the U.S. Department of Transportation permanently banned e-cigs in checked baggage in 2016, and the FDA has been expressing concern for these dangerous products for years. Finally, based on information and belief, LG Korea has been named, or is about to be named, as a defendant in hundreds of electronic cigarette explosions across the country, where one of its batteries has caused catastrophic injuries to people across the U.S. and around the world.

61.     Despite Defendants' knowledge, LG batteries are widely, readily, and easily available at electronic cigarette retail stores throughout Ohio, as well as available for direct shipment online from Amazon, Alibaba, Walmart, and other online retailers. LG has long known, tolerated, and permitted this alternative use of its lithium-ion batteries, as it is a ready profit driver for LG Korea and LGCAI. Only recently, with the spike in explosions of LG batteries - and resulting bad press - has LG taken any action to attempt to stem the tide of its batteries reaching Ohio shores, posting an insufficient "warning" to its website. And even then, the "warning" was, upon information and belief, only posted in 2019, and admits that "LG Chem has learned that some individual consumers purchase and use its cylindrical lithium-ion battery cells ... in e-cigarettes and Vape Products that incorporate replaceable and rechargeable individual Li-Ion Cells." *See* Li-ion Battery Safety Guide on LG Chem's website, available at https://www.lgchem.com/safe-cigarette.

**The Injury**

62.     Plaintiff began using e-cigarettes in an effort to quit smoking traditional cigarettes.

63.     Plaintiff purchased several LG lithium-ion 18650 batteries from Vapor Station in Heath, Ohio.

64.     On or around December 27, 2018, Plaintiff was at work at a warehouse. Plaintiff noticed that the LG lithium-ion 18650 batteries were dead, so he removed them from his e-cigarette device and put the batteries into his jeans pocket.

65.     Less than ten minutes later, Plaintiff heard a loud "pop" sound from the batteries exploding in this pocket.  A nearby witness yelled to Plaintiff that he was on fire. The batteries burned through Plaintiff's jeans and his left thigh.

66.     He was then transferred to The Ohio State University Medical Center Burn Clinic.  He was diagnosed with second- and third-degree burns to his thighs and left wrist.

67.     Plaintiff returned to the Burn Clinic for numerous follow up appointments.

68.     As a result of the explosion, Plaintiff now suffers from a sustained limp.

69.     In addition, Plaintiff no longer sleeps well.  He suffers from recurrent nightmares that he is burning up in a fire.  Plaintiff also experiences at least ten flashbacks per day of this traumatic experience.  He suffers from panic attacks.  For his own and others' safety, Plaintiff is unable to drive for extended periods of time.

70.     Plaintiff was referred to a specialist at The Ohio State University Wexner Medical Center, OSU Behavioral Health in Columbus, OH and diagnosed with Post Traumatic Stress Disorder (PTSD) as a result of this traumatic explosion.

71.     Plaintiff receives regular psychiatric therapy.

72.     Because of the extent of his injuries, Plaintiff's physicians would not permit him to return to work for two months.  As a result, Plaintiff lost his job.  Plaintiff was unable to obtain new employment until nine months after the explosion in September of 2019.

73.     The battery explosion caused Plaintiff to sustain serious, permanent physical and emotional injuries.

## IV.   CLAIMS FOR RELIEF

### COUNT ONE AGAINST ALL DEFENDANTS
**(Strict Product Liability – Design Defect Under Ohio Rev. Code § 2307.75)**

74.   Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully stated herein.

75.   Plaintiff brings a claim for relief against Defendants for product liability under Ohio Rev. Code § 2307.71 et seq., as the manufacturer, distributor, and seller of the subject e-cigarette and lithium-ion batteries, as the terms are defined under Ohio Rev. Code § 2307.71.

76.   Upon information and belief, the subject e-cigarette and lithium-ion battery that exploded were designed, manufactured, supplied, and distributed by Defendants and were defective and unreasonably dangerous under Ohio Rev. Code § 2307.75. The dangers and defects in the subject e-cigarette and lithium-ion battery existed at the time the product left the control of Defendants.

77.   Upon information and belief, the subject e-cigarette and subject battery that were sold and supplied by Defendants were defective in manufacture and construction as described in Ohio Rev. Code § 2307.74 and were defective in design or formulation as described in Ohio Rev. Code § 2307.75.

78.   At all times herein mentioned, Defendants manufactured, researched, tested, advertised, promoted, marketed, and sold the e-cigarette and lithium-ion battery as herein described above that were used by Plaintiff.

79.   The subject e-cigarette and lithium-ion battery manufactured, sold, marketed, and promoted by Defendants were expected to and did reach usual consumers,

including Plaintiff. The e-cigarette products reached Plaintiff and other consumers without substantial change in the condition in which they were produced, manufactured, purchased, sold, distributed, and marketed by Defendants.

80. The e-cigarette and subject battery designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective in design formulation in that, when left in the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design of the e-cigarette and subject battery.

81. The e-cigarette and subject battery designed, researched manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective in design formulation in that, when left in the hands of the manufacturer and/or suppliers, it was unreasonably dangerous, unreasonably dangerous in normal use, and the products were more dangerous than an ordinary consumer would expect.

82. The subject e-cigarette and lithium-ion battery were defectively designed, and that defect rendered the e-cigarette and lithium-ion battery unreasonably dangerous to ultimate users, operators, or consumers, including Plaintiff, when sold and distributed by Defendants. The defects in the e-cigarette and lithium-ion battery include, but are not limited to:

    a.  the battery failed to operate as safely as an ordinary consumer would expect;

    b.  the battery had an unreasonable propensity to heat up and catch fire during foreseeable use and under normal operating conditions; and

        c.  The e-cigarette was not fit for use with the lithium-ion 18650 battery.

83.  The e-cigarette and lithium-ion battery were in the same condition at the time Plaintiff was injured as it was when they were originally placed into the stream of commerce and at the time it was ultimately sold to Plaintiff by Defendants.

84.  The defective and unreasonably dangerous condition of the e-cigarette and lithium-ion battery were a direct and producing cause of substantial injuries and damages to Plaintiff.

85.  Safer alternative designs existed, other than the ones used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of injury without substantially impairing the e-cigarette and battery's utility.

86.  Defendants knew or should have known that at all times herein mentioned, the e-cigarette products they manufactured, sold, promoted and marketed, including the lithium-ion battery, were in a defective condition and was inherently dangerous and unsafe.

87.  Plaintiff used the e-cigarette and lithium-ion battery without knowledge of their dangerous characteristics and condition.

88.  Plaintiff used the e-cigarette and subject battery for the purposes for which they were intended and sold by Defendants.

89.  Despite their knowledge that the e-cigarette and subject battery were unreasonably dangerous and defective and that the risk of explosion outweighed any

benefits, Defendants voluntarily designed, marketed, distributed, and sold the e-cigarette and lithium-ion battery.

90.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

91.     Defendants marketed and promoted the e-cigarette and lithium-ion battery in such a manner as to make it inherently defective, as the product downplayed the suspected, probable, and known risks inherent with their normal and intended use, including but not limited to short circuits, thermal runaways, and explosions.

92.     The e-cigarette and lithium-ion battery designed, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were manufactured defectively in that the products left the hands of Defendants in a defective condition and were unreasonably dangerous to their intended users.

93.     Defendants created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

94.     Plaintiff could not, in the exercise of reasonable care, have discovered the e-cigarette and lithium-ion battery's defects herein mentioned, nor could Plaintiff have perceived their danger.

95.     By reason of the foregoing, Defendants are strictly liable to Plaintiff for the manufacture, marketing, sale, promotion, and distribution of defective products, namely the e-cigarette and lithium-ion battery.

96. Defendants' defective design of the e-cigarette and lithium-ion battery amounts to willful, wanton, and/or reckless conduct by Defendants.

97. Defects in the e-cigarette and lithium-ion battery designed, manufactured, marketed, sold, promoted, and/or distributed by Defendants were the cause or a substantial factor in causing Plaintiff's injuries.

98. As a result of the foregoing acts and omissions, Plaintiff suffered severe and personal injuries, where are permanent in nature, physical pain and mental anguish, including financial expenses for hospitalization and medical care.

99. As a result, Plaintiff seeks compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all relief this Court deems just and proper.

## COUNT TWO AGAINST ALL DEFENDANTS
### (Strict Product Liability – Failure to Warn Under Ohio Rev. Code § 2307.76)

100. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully stated herein.

101. Defendants engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting the e-cigarette and lithium-ion battery, and through that conduct knowingly and intentionally placed the e-cigarette and lithium-ion battery into the stream of commerce with full knowledge that the products reach consumers such as Plaintiff who are exposed to said products via ordinary and reasonably foreseeable uses.

102. Defendants did in fact sell, distribute, supply, manufacture, market, and/or promote the e-cigarette and lithium-ion battery to Plaintiff. Additionally, Defendants

expected the e-cigarette and lithium-ion battery that they were selling, distributing, supplying, manufacturing, marketing, and/or promoting to reach consumers, including Plaintiff, without substantial change in the condition of the products from when they were initially manufactured and distributed.

103.    At the time of manufacture or sale, Defendants could have provided the warnings or instructions regarding the full and complete risks the e-cigarette and lithium-ion battery posed because it knew or should have known of the unreasonable risks of harm associated with the use of said products.

104.    At all times mentioned herein, the aforesaid products were defective and unsafe in manufacture such that they were unreasonably dangerous to the user, and were so at the time they were manufactured, distributed, and sold by Defendants and at the time Plaintiff was exposed to and/or used the products.  The defective condition of the e-cigarette and lithium-ion battery was in part due to the fact that the products were not accompanied by proper warnings regarding the propensity of said products to overheat, explode, short-circuit, and/or experience thermal runaway.

105.    Neither the e-cigarette nor the lithium-ion battery contained warnings or caution statements which were necessary, and if complied with, were adequate to protect the health of consumers.

106.    Defendants' failure to include a warning or caution statement that was necessary and, if complied with, was adequate to protect the health of those exposed, violated the laws of Ohio.

107. Defendants could have added a warning label to the e-cigarette and lithium-ion battery to provide warnings to consumers.

108. The defect caused serious injury to Plaintiff who used the e-cigarette and lithium-ion battery in their intended manner.

109. The defect caused serious injury to Plaintiff who used the e-cigarette and lithium-ion battery in a foreseeable manner.

110. At all times herein mentioned, Defendants had a duty to properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

111. Defendants labeled, distributed, promoted, marketed, and sold the e-cigarette and lithium-ion battery even though they were dangerous and unsafe for the use and purpose for which they were intended.

112. Defendants failed to warn of the nature and scope of the dangers posed by the e-cigarette and lithium-ion battery, namely their propensity to overheat, short-circuit, and/or explode.

113. Despite the fact that Defendants knew or should have known that the e-cigarette and lithium-ion battery caused serious injuries, Defendants failed to warn of the dangerous propensity of the e-cigarette and lithium-ion battery to overheat, short-circuit, and/or explode.

114. These risks were known or knowable at the time of distribution, sale, and marketing.

115. Defendants willfully and deliberately failed to avoid the consequences associated with their failure to warn, and in doing so, Defendants acted with a conscious disregard for the safety of Plaintiff.

116. At the time of use, Plaintiff could not have reasonably discovered any defect in the e-cigarette and lithium-ion battery through the exercise of reasonable care.

117. Defendants, as the manufacturer, marketer, distributor, and/or seller of the subject products, are held to the level of knowledge of an expert in the field.

118. Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of Defendants.

119. Had Defendants properly disclosed the risks associated with the e-cigarette and lithium-ion battery, Plaintiff would have avoided the risk of explosion by not using the e-cigarette and lithium-ion battery and would have purchased a safer alternative.

120. The information that Defendants did provide or communicate failed to contain adequate warnings and precautions that would have enabled Plaintiff, and similarly situated individuals, to use the product safely, with adequate protection, and/or opt to use a safer alternative product readily available to consumers.

121. Instead, Defendants disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the  risk of injuries associated with use of e-cigarettes and lithium-ion batteries; continued to promote said products even after it knew or should have known of the unreasonable risks from use, and concealed, downplayed, or otherwise suppressed, through marketing and promotion, any information about the risks and dangers of e-cigarettes and lithium-ion batteries.

122.    To this day, Defendants fail to adequately warn of the true risks of Plaintiff's injuries associated with the use of the e-cigarette and subject battery.

123.    As a result of their inadequate warnings, the e-cigarette and subject battery were defective and unreasonably dangerous when they left the possession and/or control of Defendants, were distributed and sold by Defendants, and used by Plaintiff.

124.    As a direct and proximate result of Defendants' actions as alleged herein, and in such other ways to be later shown, the subject products caused Plaintiff to sustain injuries herein alleged.

125.    Plaintiff seeks compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all relief as this Court deems just and proper.

## COUNT THREE AGAINST ALL DEFENDANTS
### (Negligence)

126.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully stated herein.

127.    Defendants knew, or in the exercise of due care should have known, that the battery was unreasonably dangerous, and its use would create a foreseeable and unreasonable risk of harm to users, including Plaintiff.

128.    Defendants were under a duty to properly and adequately design, manufacture, assemble, import, test, inspect, label, provide adequate warnings for, package, distribute, and sell the lithium-ion battery in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly, under ordinary circumstances, would come into contact with the product, including Plaintiff.

129. The negligence of Defendants, their agents, servants, and/or employees includes, but is not limited to, the following acts and/or omissions:

a. Failing to design, manufacture, distribute, and sell the e-cigarette and battery in such a manner that it would not spontaneously heat up and catch fire;

b. Failing to design, manufacture, distribute, and sell the battery in a condition that would allow it to operate as safely as a reasonable consumer would expect;

c. Failing to provide reasonable and adequate warnings to suppliers, purchasers and users of the battery to alert users of the dangerous conditions described herein;

d. Failing to properly test the battery;

e. Failing to adopt and/or implement proper quality control procedures;

f. Failing to hire employees capable of proper manufacture, assembly, inspection, testing, and/or quality control procedures;

g. Failing to train employees capable of proper manufacture, assembly, inspection, testing, and/or quality control procedures;

h. Failing to monitor employees in the proper manufacture, assembly, inspection, testing, and/or quality control procedures;

i. Selling a product that was defective, unreasonably dangerous, and unfit for consumer use; and otherwise failing to exercise ordinary

care in discharging their duties as manufacturers and/or sellers of consumer products to the general public.

130. As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiff sustained serious and permanent bodily injuries resulting in pain and suffering, permanent impairment and scarring, mental anguish, inconvenience, loss of enjoyment of life, the expense of hospitalization, the expense of medical care and treatment in the past and to be experienced in the future, and lost wages.

131. Defendants' tortious acts alleged herein caused or contributed to cause Plaintiff's physical and emotional damages, mental and emotional distress, and permanent physical injuries.

132. Defendants were negligent and/or violated Ohio law by importing, supplying, promoting, packaging, distributing, advertising, warning, marketing, and selling the e-cigarette and lithium-ion battery in that they:

   a. Failed to provide proper and/or accurate warnings regarding all possible risks posed with the use of e-cigarettes and lithium-ion batteries; and

   b. Failed to warn Plaintiff of the severity of the risks posed, as the warnings given did not accurately reflect the propensity and likelihood of lithium-ion batteries to explode, and specifically failed to warn about the dangers posed by using lithium-ion batteries with e-cigarettes.

133. Despite the fact that Defendants knew or should have known that lithium-ion batteries have a propensity to short circuit and/or explode, Defendants continued and continue to market, manufacture, distribute, and/or sell lithium-ion batteries to consumers for use with e-cigarettes, including to Plaintiff.

134. Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of Defendants' failure to exercise any care, as set forth above.

135. Based upon the allegations in the Complaint immediately above and throughout, Defendants' actions constitute willful and wanton conduct for which punitive damages are available.

136. Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss, which Plaintiff suffered and/or will continue to suffer.

137. As a result of the foregoing acts and omissions, Plaintiff suffered from serious and dangerous injuries including, but not limited to, severe burns as well as other severe and personal injuries that are permanent and lasting in nature, physical pain and mental anguish, and financial expenses for hospitalization and medical care.

138. As a result, Plaintiff seeks compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all relief as this Court deems just and proper.

## COUNT FOUR AGAINST ALL DEFENDANTS
### (Fraudulent Omission)

139. Plaintiff re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, as if fully set forth herein.

140.    At all times relevant, Defendants fraudulent and deceptively sold the e-cigarette and lithium-ion battery as safe products without disclosing the serious risks of injury the products posed when Defendants knew otherwise.

141.    Defendants had a duty to disclose material facts to Plaintiff, as alleged throughout this Complaint, such as:

    a.  the risk of thermal runaway, short circuits, and/or explosions;

    b.  that lithium-ion batteries pose a heightened risk of explosion when used in conjunction with e-cigarettes;

    c.  that lithium-ion batteries should not be carried in one's pocket or otherwise transported without a protective wrapper;

    d.  failing to provide proper warnings to users and consumers; and

    e.  other material facts pleaded in this Complaint that would have properly warned Plaintiff and other consumers of the risks associated with e-cigarettes and lithium-ion batteries.

142.    At all times relevant, Defendants fraudulent and deceptively sold the e-cigarette and lithium-ion batteries to Plaintiff as safe or not harmful when Defendants knew it to be untrue.

143.    Defendants fraudulently and deceptively failed to disclose to Plaintiff that the e-cigarette and lithium-ion batteries present serious health risks, including but not limited to short circuits, overheating, and explosions.

144.    Defendants fraudulently and deceptively failed to disclose that they had not adequately researched or tested these products to assess their safety.

145.    Each of Defendants' omissions were material. In particular, each of the omissions concerned facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase the e-cigarette and lithium-ion batteries.

146.    Plaintiff did not know the facts that Defendants concealed.

147.    Defendants intended to deceive Plaintiff and the public by concealing these facts, and in doing so placed profit over the safety of the public.

148.    Even if Defendants did not intend to deceive Plaintiff and the public about the facts pleaded in this Complaint, Defendants knew or should have known the dangers pleaded in this Complaint so that such knowledge gave rise to a duty to disclose the information to the Plaintiff and public.

149.    Defendants had a duty to accurately provide this information to Plaintiff. In not so informing Plaintiff, Defendants breached their duty. Defendants also gained financially from, and as a result of, that breach.

150.    Defendants had ample opportunities to disclose these facts to Plaintiff, through packaging, advertising, retail outlets, and via verbal warnings. Defendants concealed material information at all relevant times to this Complaint and continue to do so.

151.    Plaintiff relied to his detriment on Defendants' fraudulent omissions. Had Plaintiff been adequately informed of the material facts concealed from him regarding the safety of the e-cigarette and lithium-ion battery and not intentionally deceived by Defendants, he would not have purchased the products and would have opted for safer alternatives.

152.    As a result of the foregoing acts and omissions, Plaintiff suffered severe and personal injuries that are permanent and lasting in nature, physical pain and mental anguish, financial expenses for hospitalization and medical care, including medical expenses and other economic and noneconomic damages.

153.    Plaintiff respectfully seeks compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all relief as this Court deems just and proper.

<u>**COUNT FIVE AGAINST ALL DEFENDANTS**</u>
**(Breach of Implied Warranty)**

154.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully stated herein.

155.    Defendants made particular implied warranties of fitness and safety of the subject lithium-ion battery.

156.    Defendants impliedly warranted the safety and fitness of the subject battery by designing, manufacturing, assembling, distributing, selling, marketing, advertising, and supplying the product for foreseeable use and made representations to Plaintiff that the components of the e-cigarette were of suitable quality for their intended use resulting in Plaintiff's injuries.

157.    Plaintiff relied upon said warranties.

158.    Defendants breached each and every one of the aforementioned warranties.

159.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff suffered serious injury of a personal and permanent nature including but not limited to pain and suffering, mental anguish, loss of enjoyment of life, wage loss,

loss of earning capacity, and emotional distress. In addition, Plaintiff incurred medical expenses and other monetary damages now and in the future.

## COUNT FIVE AGAINST ALL DEFENDANTS
### VIOLATION OF THE MAGNUSON-MOSS ACT

160.    Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

161.    The subject batteries are "consumer products" as defined in 15 U.S.C. § 2301 (1).

162.    Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

163.    Defendants are "suppliers" and "warrantors" as defined in 15 U.S.C. § 2301 (4) and (5).

164.    The defective batteries' implied warranties are covered under 15 U.S.C. §2301(7).

165.    Defendants breached implied warranties by: (a) designing, manufacturing, and selling to Plaintiff, defective and unsafe batteries; (b) providing lithium-ion batteries that are not merchantable and not fit for their ordinary purpose of safely using an e-cigarette because the batteries present an unreasonable risk of thermal runaway and explosions; and (c) not incorporating safety measures to eliminate the identified defects.

166.    At the time Defendants manufactured, sold, distributed, and/or placed the batteries into the stream of commerce, Defendants knew or should have known that the batteries had an inherently defective design that posed a unique risk of catching fire, thermal runaway, and/or explosion.

167.    Defendants breached their implied warranty of the merchantability by selling, manufacturing, distributing, supplying, and/or placing into the stream of commerce the defective battery and failing to replace the defective battery within a reasonable time and without charge.

168.    As a result of the foregoing, Plaintiffs have suffered damages.

169.    Defendant's breach was the proximate cause of Plaintiff's injuries and damages.

**<ins>COUNT SIX AGAINST DEFENDANT VAPOR STATION</ins>**
**(Violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*)**

170.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully stated herein.

171.    Defendants are "supplier[s]" as defined in Ohio Rev. Code § 1345.01(C).

172.    Plaintiff is a "consumer" as defined in Ohio Rev. Code § 1345.01(D), and his purchases of the e-cigarette and lithium-ion battery are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

173.    Defendants violated Ohio Rev. Code § 1345.02 by virtue of their unfair and deceptive acts and practices in connection with consumer transactions and the solicitation of consumer transactions.

174.    Defendants also violated Ohio Rev. Code § 1345.03 by virtue of their unconscionable acts and practices in connection with consumer transactions and the solicitation of consumer transactions.

175.    In connection with the sale of the e-cigarette and lithium-ion battery to Plaintiff, Defendants failed to disclose material information—namely, the risk of thermal runaway, short circuits, and/or explosions; that lithium-ion batteries pose a heightened risk of explosion when used in conjunction with e-cigarettes; that lithium-ion batteries should not be carried in one's pocket or otherwise transported without a protective wrapper; and other material facts pleaded in this Complaint that would have properly warned Plaintiff and other consumers of the risks associated with e-cigarettes and lithium-ion batteries. Plaintiff expressly incorporates all of the other deceptive and unconscionable actions pleaded in this Complaint with regard to its claims under the Ohio Consumer Sales Practices Act.

176.    As a direct and proximate result of Defendants' unlawful methods, acts, and practices, Plaintiff suffered injury as he purchased the e-cigarette and lithium-ion battery that he otherwise would not have, or in the alternative, would have purchased a different type of e-cigarette device without a 18650 lithium-ion battery.

177.    Pursuant to Ohio Rev. Code § 1345.09, Plaintiff seeks treble damages, revocation, rescission, injunctive relief, and his reasonable costs and attorney fees.

## V.    PRAYER FOR RELIEF

### Punitive Damages

178.    Plaintiff seeks punitive damages against Defendants.

179.    Defendants knew that subject e-cigarette and lithium-ion battery were unreasonably dangerous in its ordinary, intended use.  At the time Defendants sold the e-cigarette and lithium-ion battery and at all times afterward, Defendants were aware there

was a high likelihood that the lithium-ion battery could spontaneously combust during normal and intended use and that such explosions would cause serious physical injury to persons, including Plaintiff.

180. Defendants' conduct constituted a flagrant disregard of the safety of persons, including Plaintiff, who might be harmed by the lithium-ion battery.

181. Plaintiff is entitled to an award of punitive damages against Defendants under Ohio Rev. Code § 2307.80.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter a judgment, jointly and severally, in an undetermined amount as and for compensatory damages, punitive damages to be determined by the Court or Jury, prejudgment interest to be determined by the Court, reasonable attorney's fees and costs, and all other relief to which he may be entitled.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues so triable under the law.

/s/ *Mark H. Troutman*
Mark H. Troutman (0076390)(Trial Attorney)
*Counsel for Plaintiff*

Respectfully submitted,

**Isaac Wiles Burkholder & Teetor, LLC**
**Levin Simes Abrams LLP**

/s/ *Mark H. Troutman*
Mark H. Troutman (0076390)(Trial Attorney)

Shawn K. Judge (0069493)
Isaac Wiles Burkholder & Teetor, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Phone: (614) 221-2121
Facsimile: (614) 365-9516
mtroutman@isaacwiles.com
sjudge@isaacwiles.com


Angela J. Nehmens (CA Bar No. 309433)*
Levin Simes Abrams LLP
1700 Montgomery Street, Suite 250
San Francisco, CA 94111
Phone: (415) 426-3000
Facsimile: (415) 426-3001
anehmens@levinsimes.com
* *To be admitted pro hac vice*

*Counsel for Plaintiff*