IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Paul Straight,

        Plaintiff,

   v.

LG Chem, Ltd., *et al.*,

        Defendants.

Case No: 2:20-cv-6551

Judge Graham

Magistrate Judge Deavers

<u>Opinion and Order</u>

Plaintiff Paul Straight, an Ohio resident, brings this products liability action relating to batteries he used in an e-cigarette device. Plaintiff alleges that the batteries exploded and caused him burn injuries. Among the defendants is LG Chem, Ltd., a Korean corporation that manufactured the batteries. LG Chem has moved to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. LG Chem argues that it did not manufacture, sell, or distribute the batteries in Ohio. The Court, after having allowed jurisdictional discovery, finds that plaintiff has failed to meet his burden of demonstrating that the Court has personal jurisdiction over LG Chem. For the reasons set forth below, LG Chem's motion to dismiss is granted.

I.    Background

   A.    **Procedural History**

Plaintiff brought suit against four defendants: (1) manufacturer LG Chem, Ltd, (2) LG Chem America, Inc. ("LGCAI"), an American subsidiary of LG Chem, Ltd. and alleged distributor of LG Chem products, (3) Picktown Vapor Station, LLC, an Ohio company which allegedly sold or distributed the batteries that injured plaintiff, and (4) Vapor Station, LLC, an Ohio company which directly sold the batteries to plaintiff. Plaintiff has since voluntarily dismissed LGCAI and Vapor Station from the suit, leaving LG Chem and Picktown Vapor Station as defendants.

The complaint alleges that the batteries which exploded were a type commonly referred to as 18650 lithium-ion batteries. The complaint alleges that the batteries were defectively designed and that the packaging failed to include proper warnings about the dangers associated with using the

1

batteries in e-cigarette or vaping devices. The complaint asserts claims for breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, as well as state law claims.

LG Chem moved to dismiss for lack of personal jurisdiction. It argued that the 18650 batteries were never intended to be used as a standalone consumer product. Rather, the 18650 cells were made by LG Chem and encased in battery packs for use in products like power tools. According to LG Chem, only though the unauthorized actions of third parties did the 18650 batteries end up being sold in stores like Vapor Station.

Plaintiff responded by claiming that LG Chem had shipped lithium-ion batteries directly to Ohio and was doing business in Ohio. Plaintiff further contended that LG Chem was "flooding" the United States with 18650 batteries and was well-aware of, and profiting from, the use of its batteries in e-cigarette devices.

At the close of briefing, the Court concluded that jurisdictional discovery would help clarify or resolve certain factual issues, including how the batteries which injured plaintiff arrived in Ohio and whether LG Chem had supplied 18650 batteries, whether standalone or encased, to Ohio. The parties have now completed jurisdictional discovery and filed supplemental briefs.

  **B.**  **Jurisdictional Facts**

LG Chem is a South Korean company with its headquarters in Seoul, South Korea. LG Chem does not have a place of business or an office in Ohio, and it is not registered to do business in Ohio. It does not own or lease real property in Ohio, nor does it have employees who work in Ohio. Decl. of Kiwon Choi, ¶¶ 7–13.

LGCAI is a wholly-owned subsidiary of LG Chem. It is a Delaware corporation with its principle place of business in Georgia. LGCAI keeps its own employees, accounts, and records, and maintains a separate corporate existence from LG Chem. *Id.*, ¶¶ 14–16.

LG Chem manufactured 18650 battery cells, but it did not design or manufacture them in Ohio. LG Chem manufactured 18650 cells for use as "industrial component parts." It did not design, manufacture, distribute, sell or advertise them as a standalone consumer product in Ohio or elsewhere. Rather, LG Chem manufactured 18650 cells to be housed in battery packs with protective circuity for use in specific applications, such as power tools. *Id.*, ¶¶ 19–22; Doc. 29 at PAGEID 267.

LG Chem did not sell, supply, or ship 18650 batteries – either as standalone cells or packaged for use in battery packs – to anyone in Ohio. Choi Supp. Decl., ¶ 7; Doc. 53-1, Ans. to Interrog. Nos. 3, 13, 17, 19, 20, 23; Doc. 53-3, Resp. to Req. for Adm., Nos. 1–3, 5, 7, 8. It did not

earn any revenue from the sale or distribution of 18650 batteries in Ohio. Doc. 53-1, Ans. to Interrog. No. 6; Doc. 53-3, Resp. to Request for Adm., No. 9. LG Chem did not advertise or solicit business in Ohio with respect to 18650 batteries. Doc. 53-1, Ans. to Interrog. Nos. 15, 16; Doc. 53-3, Resp. to Request for Adm., No. 6.

LG Chem sold its 18650 cells to two distributors in the United States – one in Illinois and one in Texas. It did not control the distribution of batteries, as the distributors were independent from LG Chem. Batteries sold by LG Chem were prepared and intended for use in battery packs by original equipment manufacturers and battery packers. Doc. 53-1, Ans. to Interrog. No. 21.

Plaintiff purchased the batteries at issue in December 2018 from Vapor Station in Heath, Ohio. Doc. 66-6, Ans. to Interrog. No. 4. Picktown Vapor supplied the batteries to Vapor Station. In 2018, Picktown purchased 18650 batteries from a distributor named Indy-Ecigs. In prior years, it purchased batteries from a distributor named Efest. Doc. 66-8, Ans. to Interrog. No. 6.

The record contains no evidence to indicate from where Indy-Ecigs or Efest may have obtained 18650 cells. There is no evidence that LG Chem or any of its subsidiaries supplied batteries to Indy-Ecigs or Efest or had any contracts, transactions or dealings with them.

LG Chem did not conduct any business with Picktown Vapor or Vapor Station. It did not direct or control the actions of Picktown Vapor or Vapor Station. LG Chem did not authorize Picktown Vapor or Vapor Station, or anyone else, to distribute, sell, or advertise 18650 batteries as a standalone consumer product in Ohio. It did not provide, authorize, or advertise any repair or replacement services for 18650 batteries in Ohio. Choi Decl., ¶ 23.

Both parties recognize that this suit is one of dozens, perhaps hundreds, which have been filed by individuals who have suffered injuries when using LG 18650 cells in e-cigarette devices. Consistent with the record in this case, discovery in those cases has shown that LG Chem manufactured 18650 batteries, which were in turn encased in packs for use in power tools, vacuum cleaners, electronic scooters, and electric vehicles. *See, e.g.*, *Sullivan v. LG Chem, Ltd.*, 585 F.Supp.3d 992, 999 (E.D. Mich. 2022) (explaining that LG Chem sells 18650 batteries to major manufacturers who in turn incorporate them into power tools); *Mehl v. LG Chem Ltd.*, No. 6:21-cv-01149-AA, 2022 WL 3595089, at *4 (D. Or. Aug. 23, 2022); *Richter v. LG Chem, Ltd.*, No. 18-cv-50360, 2020 WL 5878017, at *2 (N.D. Ill. Oct. 2, 2020); *LG Chem, Ltd. v. Superior Ct. of San Diego Cnty.*, 80 Cal.App.5th 348, 357 (2022); *LG Chem, Ltd v. Granger*, No. 14-19-00814-CV, 2021 WL 2153761, at *6 (Tx. Ct. App. May 27, 2021); *Schnexnider v. E-Cig Central, LLC*, No. 06-20-00003-CV, 2020 WL 6929872, at *7 (Tex. Ct. App. Oct. 28, 2020).

LG Chem did not authorize or intend for any distributor, wholesaler, retailer, or any other entity to sell or distribute 18650 cells as a standalone consumer product. Choi Decl., ¶¶ 24–25; Dep. of Kyung Taek Oh, p. 35. According to the complaint, and again consistent with what discovery in other cases has shown, third party entities obtain the 18650 batteries and sell them to distributors in the United States. Am. Compl., ¶ 19. In a practice called "rewrapping," a third party takes the 18650 batteries, which have been removed from their encasing or their LG Chem packaging, and wraps them for individual sale as standalone batteries to consumers. *See, e.g., Davis v. LG Chem, Ltd.*, 849 Fed. App'x 855, 856 (11th Cir. 2021); *Yamashita v. LG Chem, Ltd.*, No. 20-cv-129, 2020 WL4431666, at *10 (D. Haw. July 31, 2020); *LG Chem, Ltd v. Turner*, No. 14-19-00326-CV, 2021 WL 2154075, at *3 (Tx. Ct. App. May 27, 2021); *Eriksen v. ECX, LLC*, 15 Wash.App.2d 1001, at *1 (2020).

LG Chem admits that it has been aware of the practice of rewrapping and the sale of its 18650 cells to American consumers for use in vaping devices. To discourage this unauthorized practice, LG Chem has placed warning labels on the cells about the risks of misuse of its batteries, and it has sent cease-and-desist letters to vaping supply distributors and retailers, including to over 250 shops in Ohio. Doc. 53-1, Ans. to Interrog. Nos. 14, 17; Oh Dep., p. 35; Doc. 39-2.

In addition to the jurisdictional facts relating to 18650 cells, plaintiff has presented evidence of certain contacts which LG Chem has had with Ohio. In 2016, LG Chem supplied lithium-ion batteries to the Village of Minster, Ohio for use in an energy storage system. Doc. 36-12. In 2015, LG Chem supplied lithium-ion batteries to Duke Energy for use in an energy storage facility in New Richmond, Ohio. Doc. 36-15. In neither of these cases were the lithium-ion batteries the type at issue here (18650 cells). Choi Supp. Decl., ¶¶ 5–6.

In the five-year period ending in January 2019, LG Chem made 529 shipments of petrochemical products into Ohio. Doc. 36-17. The products were not used in any battery cells. Choi Supp. Decl., ¶ 8.

Finally, LG Chem awarded a research grant to Ohio State University in 2018 regarding "Characterizing and Optimizing Electrode Surfaces for High-Energy Li-ion Batteries." Doc. 36-19. This research grant did not relate to 18650 cells. Doc. 39-3.

## II.     Standard of Review

LG Chem moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction. "The party seeking to assert personal jurisdiction bears the burden of

demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012). Plaintiff's burden varies depending on how the district court handles the jurisdictional issue, as the court may: (1) decide the motion on the basis of written submissions and affidavits alone, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Where, as here, the court does not conduct an evidentiary hearing, plaintiff must establish a "prima facie" case of personal jurisdiction. *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 476–78 (6th Cir. 2003); *Smith v. Home Depot USA, Inc.*, 294 Fed. App'x 186, 188–89 (6th Cir. 2008). In this posture, "the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). The court "may consider the defendant's undisputed factual assertions" but must consider disputed facts in a light most favorable to the plaintiff. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). And where, as here, jurisdictional discovery has been conducted and "there does not appear to be any real dispute over the facts relating to jurisdiction," the prima facie "proposition loses some of its significance." *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997); *accord Conn*, 667 F.3d at 711.

### III. Discussion

"A valid assertion of personal jurisdiction must satisfy both the state long-arm statute, and constitutional due process." *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). *See also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "[I]f jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Conn v. Zakharov*, 667 F.3d 705, 711–12 (6th Cir. 2012).

For purposes of due process, there are two types of personal jurisdiction: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court has general jurisdiction when a defendant's affiliations with the forum state are "so 'continuous and systematic' as to render" the defendant "essentially at home" there. *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A corporate defendant is generally "at home" at its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). There is no dispute here that general jurisdiction is lacking, as LG Chem has no continuous or systematic affiliations with the state of Ohio.

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (quotations omitted). The central concern is "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); *accord Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Sixth Circuit utilizes a three-part test for evaluating whether the proposed exercise of personal jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prod. & Controls, Inc. v. Safetech Intl, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quotations omitted).

### A. Purposeful Availment

The purpose availment inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted). The test is satisfied "where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Id.* (quotations omitted). If a defendant has "deliberately" invoked "the benefits and protections" of a forum state's laws by engaging in significant activities there or engaging in "continuing obligations" with residents of the forum, then he has purposefully availed himself of the forum. *Id.* at 475–76 (quotations omitted).

Plaintiff has submitted evidence to support its assertion that LG Chem has purposefully availed itself of the privilege in acting in Ohio. This includes evidence that LG Chem: (1) supplied lithium-ion batteries to the Village of Minster for use in an energy storage system, (2) supplied lithium-ion batteries to Duke Energy for use in an energy storage facility in New Richmond, (3) made 529 shipments of petrochemical products to Ohio, and (4) funded research of lithium-ion technology at Ohio State University.

LG Chem raises two objections to plaintiff's argument. First, it contends that the evidence relating to LG Chem's contacts with Ohio is inadmissible hearsay. Plaintiff relies on publicly-available news articles and sources to support his factual assertions. The Court agrees with LG Chem that plaintiff's evidence is not currently in admissible form. The evidence contains hearsay

and has not been authenticated. However, the Court finds that plaintiff likely could present the facts in admissible form if required to do so. Moreover, LG Chem has not actually disputed the truth of plaintiff's factual assertions.

LG Chem's secondly objects that its contacts with Ohio concern products which are not the subject of the this lawsuit. That is, the batteries supplied to the Village of Minster and Duke Energy were not 18650 cells, the petrochemical products were not used in 18650 cells, and the research grant did not concern 18650 cells. The Court finds that LG Chem's argument misses the mark at this point of the analysis. The fact that LG Chem's contacts with Ohio do not concern the product which injured plaintiff will be considered in the second part of the due process analysis – whether the cause of action arises from or relates to defendant's activities in the forum state. *See Superior Ct. of San Diego Cnty.*, 80 Cal. App. 5th at 363 (rejecting a similar argument to the one here because it "conflates the concepts of purposeful availment and relatedness").

The Court finds that plaintiff has made a prima facie showing that LG Chem purposefully availed itself of the privilege of acting in Ohio. Plaintiff has shown that LG Chem supplied lithium-ion batteries to entities in Ohio, shipped petroleum products to destinations in Ohio, and awarded a research grant to an Ohio university. These direct contacts are substantial and result from the actions of LG Chem itself, not a third party, and LG Chem has thereby purposefully availed itself of the privilege of acting in Ohio. *See Sullivan*, 585 F.Supp.3d at 1003–04 (holding that LG Chem purposefully availed itself of the forum by directly shipping lithium-ion batteries to an automaker and to a vacuum-cleaner manufacturer in Michigan); *Alvin Macias v. LG Chem*, No. 20-2416, 2021 WL 2953162, at *3 (C.D. Cal. May 7, 2021) (holding that LG Chem purposefully availed itself of the forum by, among other things, partnering with California companies to install battery energy storage units); *Superior Ct. of San Diego Cnty.*, 80 Cal. App. 5th at 363 (holding that LG Chem purposefully availed itself of the forum by selling and shipping its products to California businesses).

    **B.**    **Relatedness**

In order to satisfy due process, there must also be "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, __ U.S. __, 137 S.Ct. 1773, 1781 (2017). Due process requires that a suit "arise out of or relate to the defendant's contacts with the forum." *Id.* at 1780 (quotations and emphasis omitted). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S.Ct. 1017, 1026 (2021).

7

Plaintiff's claims do not arise out of LG Chem's contacts with Ohio. He was not harmed by the energy storage facilities in Minster or New Richmond or by the petroleum products shipped into Ohio or by the research grant to Ohio State University. He was injured by exploding 18650 cells, and the evidence shows that LG Chem did not sell, supply or distribute 18650 cells to Picktown Vapor or to Vapor Station.

Plaintiff argues that his claims relate to LG Chem's contacts with Ohio. But it is important to explain how jurisdictional discovery has shaped this issue. Before discovery, plaintiff asserted that LG Chem had "flooded" the United States and Ohio with 18650 batteries. Plaintiff argued in his brief on the motion to dismiss that LG Chem had "purposefully serv[ed] the Ohio market" with 18650 batteries. Doc. 36 at PAGEID 345. He further argued that LG Chem had shipped "mass amounts" of batteries "directly to Ohio entities and foster[ed] relationships with the same." *Id.* at PAGEID 346.

LG Chem adamantly denied plaintiff's assertions, which were unsupported. The Court allowed for discovery, and there is now not only no evidence that LG Chem sold, shipped, or distributed 18650 cells as a standalone consumer product to Ohio, but also no evidence that LG Chem sold, shipped, or distributed 18650 cells for use in battery packs or in encased housings to Ohio. LG Chem has submitted undisputed evidence that it did not supply "any 18650 lithium ion battery cells to anyone in Ohio." Choi Suppl. Decl., ¶ 7; *see also* Doc. 53-1, Ans. to Interrog. Nos. 3, 13, 17, 19, 20, 23; Doc. 53-3, Resp. to Req. for Adm., Nos. 1–3, 5, 7, 8.

As noted above, LG Chem has faced a multitude of personal injury suits in federal and state courts over its 18650 batteries. The relatedness inquiry in many of those cases has focused on the fact that the plaintiffs used the battery as a standalone consumer product, whereas LG Chem's contacts with the forum state concerned shipping 18650 cells into the state for use in battery packs for power tools, electric vehicles, and so forth. Courts have split on whether a claim for injury resulting from the unauthorized, standalone use of the 18650 cell in vaping devices relates to LG Chem's shipping of the same type of cell into a state for use in a battery pack that is incorporated into a non-vaping product. *Compare Sullivan*, 585 F.Supp.3d at 1005 (holding that LG Chem's contacts – supplying 18650 cells to an automotive manufacturer and vacuum cleaner manufacturer in Michigan – related to the claims because they concerned the "very product" which malfunctioned); *Tieszen v. EBay, Inc.*, No. 4:21-CV-04002-KES, 2021 WL 4134352, at *6 (D.S.D. Sept. 10, 2021) (holding that LG Chem's sale of 18650 cells for industrial use in South Dakota related to the claims because they "both revolve around the 18650 lithium-ion battery") *with Mehl*,

8

2022 WL 3595089, at *5 ("There is no nexus between Plaintiff's claim and LG Chem's sale of batteries [in Oregon] for use in other applications, such electric scooters, e-bikes, or electric vehicles."); *Superior Ct. of San Diego Cnty.*, 80 Cal. App. 5th at 367–68 (holding that LG Chem's sale of 18650 cells for use in electric vehicles did not relate to plaintiff's claims because the sales served an industrial market while plaintiff's claims concerned an unauthorized consumer market); *Turner*, 2021 WL 2154075, at *5 (holding that LG Chem's sale of 18650 cells in Texas for use in power tools was not "connected in any way to the sale or distribution of [18650] batteries in Texas smoke shops").

       The Court need not take sides on the debate because LG Chem has submitted undisputed evidence that it did not sell or distribute 18650 cells to Ohio, even for industrial use. This leaves plaintiff in an attenuated position. LG Chem's contacts with Ohio bear no direct or close relation to the 18650 batteries which caused plaintiff's injury. Rather, LG Chem's contacts are associated with plaintiff's claims in a far more generalized sense – the use of lithium-ion technology. The energy storage facilities in Minster and New Richmond used lithium-ion batteries, and the research grant focused on lithium-ion technology. The 18650 cells used by plaintiff were lithium-ion.

       The Supreme Court in *Ford* rejected a view that "anything goes." *Ford*, 141 S.Ct. at 1026. "[T]he phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* In *Ford*, plaintiffs in Montana and Minnesota asserted products liability claims based on alleged defects with Ford cars which had been shipped to, and initially purchased in, states outside of where plaintiffs lived and brought their respective suits. Ford argued that the claims did not arise out of or relate to its contacts with the forum states because it had not designed, manufactured, or sold in Montana or Minnesota the particular cars which injured plaintiffs. The Supreme Court, however, held that the claims related to Ford's contacts with those states because Ford had, with respect to the car models which injured plaintiffs (the Explorer and the Crown Victoria), "advertised, sold, and serviced" the same models to consumers in Montana and Minnesota. *Id.* at 1028. Thus, "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.*; *see also id.* at 1032, 1033 (Alito, J., concurring) (noting that the "whole point" of Ford's marketing efforts and its sales and service networks was "to put more Fords (including those in question here) on Minnesota and Montana roads").

       Here, the Court finds that plaintiff has not shown that LG Chem's contacts with Ohio relate to the product which harmed him. Unlike in *Ford*, plaintiff has not demonstrated that LG Chem advertised, sold, serviced or otherwise encouraged a market for 18650 cells in Ohio. LG Chem in

9

fact has established that it neither earned revenue from the sale or distribution of 18650 cells in Ohio nor advertised or solicited business in Ohio with respect to 18650 cells. Doc. 53-1, Ans. to Interrog. Nos. 6, 15, 16; Doc. 53-3, Resp. to Request for Adm., Nos. 6, 9.

Broadening the definition of the market from 18650 cells to all lithium-ion battery technology goes too far and finds no support in *Ford* or the case law which has followed. *Ford* defined the market as that of the "very vehicles that the plaintiffs allege malfunctioned." *Ford*, 141 S.Ct. at 1028; *id.* at 1022, 1028–1030 (repeated references to the "car models" at issue). Applying the *Ford* approach here requires plaintiff to show that defendant's contacts with Ohio served the market for the battery model at issue – the 18650 cell. And plaintiff has failed to so demonstrate. *See Richter v. LG Chem, Ltd.*, No. 18 CV 50360, 2022 WL 5240583, at *3 (N.D. Ill. Sept. 27, 2022) ("A proper analogy between this case and *Ford* would require facts showing that LG Chem markets and sells its rechargeable batteries throughout Illinois, directly to consumers, for use in e-cigarettes; that LG Chem maintains a network of battery repair or reclamation shops within Illinois to help increase demand; and that despite all this, Mr. Richter just so happened to purchase his particular LG Chem batteries outside Illinois. None of this resembles reality."); *Sullivan*, 585 F.Supp.3d at 1005 (holding that the relevant market was for the product which plaintiff used – the 18650 cell); *Superior Ct. of San Diego Cnty.*, 80 Cal. App. 5th at 367–69 (holding that to satisfy the relatedness test of *Ford*, plaintiff must show more than that the defendant "serves any market"; defendant must serve a market for 18650 cells).

### C. Reasonableness

Plaintiff's failure to satisfy the relatedness test of the due process analysis provides a sufficient basis for granting the motion to dismiss. Even so, the Court wishes to address an argument on which plaintiff places much emphasis. Plaintiff argues that it would be fundamentally unfair for him to be unable to proceed against LG Chem when there is evidence that LG Chem knew its 18650 batteries were being used in vaping devices and posed a risk of harm to American consumers. *See* Dep. of Joon Young Shin at 28. Plaintiff contends that a large corporation with a global presence should not be able to escape accountability in courts of the United States.

In the final prong of the due process analysis, a court considers whether the exercise of jurisdiction "would comport with traditional notions of fair play and substantial justice." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). The court may consider "plaintiff's interest in obtaining relief," "the interests of the forum State," and "the burden on the defendant." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014). A court should give

"special weight to the 'unique burdens placed upon one who must defend oneself in a foreign legal system.'" *Lyngaas v. Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991)).

While plaintiff has a convenience interest in bringing suit in his home state, fairness must be considered from defendant's perspective as well. *See Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 397 (6th Cir. 2021) (noting that plaintiff's convenience interests give way to "the imperative that due process mainly concerns 'the burden on the defendant'") (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1780). LG Chem did not authorize or encourage the use of its 18650 cells in vaping devices. *See* Choi Decl., ¶ 21. It actively discouraged the practice by placing warnings on its batteries, posting warnings on its website and sending cease-and-desist letters to vaping stores, including ones in Ohio.[1] *See* Doc. 39-2 (LG Chem's public statement warning of the risks associated with using 18650 cells in vaping devices and providing notice that its cells "are not authorized, approved or intended for sale or use" in vaping devices); Doc. 66-1, Ans. to Am. Interrog. No. 17; Doc. 66-4.

An important due process consideration is that a defendant be subjected to a forum's jurisdiction based on its own actions and not the unauthorized conduct of third parties, even if expected or foreseeable. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) ("This Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (a defendant will not be subjected to a forum's jurisdiction solely because of the "unilateral activity of another party or a third person"); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (foreseeability that product will enter the forum state "has never been a sufficient benchmark for personal jurisdiction"). This principle has led other courts to reject the same or similar arguments to the one plaintiff makes here. *See, e.g., Reyes v. Freedom Smokes, Inc.*, No. 5:19-CV-2695, 2020 WL 1677480, at *6 (N.D. Ohio Apr. 6, 2020) (rejecting a "stream of commerce" theory with respect to LG Chem's 18650 cells); *Superior Ct. of San Diego Cnty.*, 80 Cal. App. 5th at 368 (discussing LG Chem's efforts to "deliberately structure[] its transactions from being used" in vaping devices); *Richter*, 2022 WL 5240583, at *5; *Death v. Mabry*, No. C18-5444 RBL,

---

[1] Plaintiff's supplemental brief contains a legally-unsupported assertion that LG Chem's sending of cease-and-desist letters to Ohio vaping stores is enough to confer jurisdiction. The Court finds that plaintiff's personal injury claims do not arise out of or relate to LG Chem's act of letter-sending. It is well-established that "the mere sending of cease and desist letters is insufficient to give rise to personal jurisdiction." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F.Supp.3d 294, 303 (N.D. Ohio 2021) (citing cases).

2018 WL 6571148, at *3–4 (W.D. Wash. Dec. 13, 2018); *State ex rel. LG Chem, Ltd. v. McLaughlin*, 599 S.W.3d 899, 904 (Mo. 2020).

With it not being enough to satisfy due process that a product could foreseeably enter Ohio against LG Chem's intentions, plaintiff resorts to asking this Court "to issue a jurisdictional rule" which "deviates slightly from traditional specific jurisdiction." Doc. 36 at PAGEID 348. But the new rule plaintiff asks for represents a major deviation. Plaintiff says the rule should be that a foreign defendant's contacts need only be with "the United States rather than one particular state." *Id.* According to plaintiff, if LG Chem floods the United States with its batteries for the vaping market, then it should be required to face suit anywhere in the country.

Plaintiff's argument fails for at least two reasons. First, the record of this Court (and others) contradicts plaintiff's factual assertion about LG Chem "flooding" the U.S. vaping market with 18650 cells. There is no evidence that LG Chem supplied, sold, distributed or otherwise authorized its 18650 cells to be sold by American vaping retailers or used by American vaping consumers. To the contrary, LG Chem took steps to prevent such use, as discussed above.

Second, this Court cannot change the law regarding due process and personal jurisdiction. Service of process confers personal jurisdiction. *Burnham v. Superior Ct.,* 495 U.S. 604, 613 (1990); *Canaday*, 9 F.4th at 395. The relevant rule of service, Rule 4(k)(1) of the Federal Rules of Civil Procedure, provides three options.[2] Two of them are inapplicable, as one pertains to joinder under Rule 14 or 19 and the other concerns federal statutes for which Congress has provided nationwide service of process. Fed. R. Civ. P. 4(k)(1)(B), (C); *see Napoli-Bosse v. Gen. Motors LLC*, 453 F.Supp.3d

---

[2] An alternative track for establishing personal jurisdiction through service is found in Rule 4(k)(2), which provides for the exercise of personal jurisdiction over a defendant who "is not subject to jurisdiction in any state's courts" if "a claim arises under federal law" and the exercise of jurisdiction comports with due process under the Fifth Amendment. *See Lyngaas*, 992 F.3d at 421–22.

This provision better fits plaintiff's hypothetical of a large foreign corporation which intentionally supplies defective goods to American consumers yet is not subject to jurisdiction in any state. The relevant contacts would be defendant's contacts with "the United States as a whole, rather than a particular state." *Id.* (internal quotation marks omitted).

However, plaintiff has not attempted to establish jurisdiction over LG Chem under Rule 4(k)(2). It would be difficult for him to show that LG Chem "is not subject to jurisdiction in any state's courts." Fed. R. Civ. P. 4(k)(2). Several courts, including ones in Georgia and Texas, have found that LG Chem is subject to jurisdiction in those states because LG Chem supplied 18650 cells to distributors or manufacturers there. *See, e.g.*, *LG Chem, Ltd. v. Lemmerman*, 361 Ga. App. 163, 164, 863 S.E.2d 514, 518 (2021); *LG Chem Am., Inc. v. Morgan*, No. 01-19-00665-CV, 2020 WL 7349483 (Tex. Ct. App. Dec. 15, 2020).

536, 541 (D. Conn. 2020) ("[T]he Magnuson-Moss Warranty Act . . . does not authorize nationwide service."); *In re Takata Airbag Prod. Liab. Litig.*, 396 F.Supp.3d 1101, 1168 (S.D. Fla. 2019) (same); *Alisoglu v. Cent. States Thermo King of Oklahoma, Inc.*, No. 12-CV-10230, 2012 WL 1666426, at *3 (E.D. Mich. May 11, 2012) (same).

That leaves the option of establishing personal jurisdiction by showing that the defendant is "subject to jurisdiction in the host State." *Canaday*, 9 F.4th at 396 (citing Fed. R. Civ. P. 4(k)(1)(A)). Ohio's long-arm statute authorizes state courts to "exercise personal jurisdiction over a person on any basis consistent with . . . the United States Constitution." O.R.C. § 2307.382(C). Thus, the applicable inquiry is the familiar one under the Due Process Clause of the Fourteenth Amendment: "Whether a court has personal jurisdiction over a defendant depends on the defendant's contacts *with the State* in which the plaintiff filed the lawsuit." *Canaday*, 9 F.4th at 396 (emphasis added). *See also Daimler*, 571 U.S. at 125 (stating that under Rule 4(k)(1)(A) federal courts are to "follow state law in determining the bounds of their jurisdiction over persons"); *Bird v. Parsons*, 289 F.3d at 874 (examining the nature of defendant's contacts with Ohio in a federal question case where there was no nationwide service of process).

This Court agrees with a recent decision of the Eleventh Circuit rejecting an attempt similar to plaintiff's to change the focus from LG Chem's contacts with the forum state to its "contacts with the United States as a whole." *Durham v. LG Chem, Ltd.*, No. 21-11814, 2022 WL 274498, at *1 (11th Cir. Jan. 31, 2022) (per curiam). The Eleventh Circuit affirmed the traditional rule that under Rule 4(k)(1)(A) a trial court "'must assess the defendant's contacts with the forum state (rather than with the United States as a whole).'" *Id.* at *2 (quoting Wright & Miller, Fed. Practice and Procedure § 1069 (4th ed. 2021).

In sum, the Court concludes that plaintiff's arguments regarding fairness do not justify deviating from traditional due process analysis. Given the absence of contacts with Ohio which relate to plaintiff's claim, it would be unreasonable for the Court to exercise jurisdiction over LG Chem.

### D. LG Chem and LGCAI, its American Subsidiary

A plaintiff can use an alter-ego theory to "subject a parent company to personal jurisdiction where 'the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *Lyngaas*, 992 F.3d at 420 (quoting *Indah v. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011)). A court should look to state law in conducting the alter-ego analysis. *Id.*

In Ohio the corporate form may be disregarded when "control over the corporation by those to be held liable [is] so complete that the corporation has no separate mind, will, or existence of its own." *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 289 (1993). Plaintiff must show that the parent and subsidiary are "fundamentally indistinguishable." *Id.* at 288. A court should consider such factors as whether the parent and subsidiary observe corporate formalities, keep separate records and books, do not commingle funds and assets, retain their own employees and officers, and use separate facilities to conduct business. *See U.S. Bank Nat'l Ass'n v. MMCO, L.L.C.*, 2021-Ohio-4605, ¶ 60, 183 N.E.3d 499, 515 (Ohio Ct. App.); *Snapp v. Castlebrook Builders, Inc.*, 2014-Ohio-163, ¶ 80, 7 N.E.3d 574, 596 (Ohio Ct. App.); *Flynn v. Greg Anthony Constr. Co.*, 95 Fed. App'x 726, 736–37 (6th Cir. 2003); *Invacare Corp. v. Sunrise Med. Holdings, Inc.*, No. 1:04 CV 1439, 2004 WL 3403352, at *6 (N.D. Ohio Dec. 15, 2004).

Plaintiff has fallen well short of making the requisite showing to establish that LGCAI is the alter ego of LG Chem. Plaintiff argues that LG Chem made "no distinction" between itself and LGCAI. Doc. 36 at PAGEID 332. But the only factual assertions he makes in support are that LGCAI lacks its own website and that LG Chem and LGCAI share a YouTube channel.

LG Chem, meanwhile, has shown that LGCAI observes corporate formalities, keeps its own financial accounts and business records, and has its own employees and corporate officers. Choi Decl., ¶¶ 14, 16. LGCAI pays employees out of its own funds. *Id.*, ¶ 16. It has its own corporate headquarters. *Id.*, ¶ 14.

The Court thus finds that plaintiff has failed to demonstrate that LG Chem is subject to jurisdiction in Ohio by way of an alter-ego theory. *See Macias*, 2021 WL 2953162, at *5 (holding that plaintiff failed to establish an alter-ego relationship between LG Chem and LGCAI in California).

## IV.  Conclusion

Accordingly, LG Chem's motion to dismiss for lack of personal jurisdiction (doc. 28) is GRANTED.

This case remains pending against Picktown Vapor.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: November 9, 2022